UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLOBAL TECH INDUSTRIES GROUP INC.,

                    Plaintiff,

          v.

DAVID WELLS,

                    Defendant.

**OPINION AND ORDER**
21 Civ. 06891 (ER)

Ramos, D.J.:

Global Tech Industries Group, Inc. brings this action against David Wells, alleging breach of contract and seeking an injunction to enjoin Wells from selling the stocks he owns in Global Tech.  Before the Court is Wells' motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.  For the reasons set forth below, the motion is GRANTED.

I.     **Background and Procedural History**[1]

Formerly known as Tree Top Industries, Inc., Global Tech is a corporation organized under the laws of the State of Nevada, with a registered address in Las Vegas, Nevada and executive offices in New York City.  Doc. 23, Plaintiff's Opposition to Defendant's Motion to Dismiss at 4; Doc. 22-1, Defendant's Memorandum in Support of Motion to Dismiss, at 10; ¶¶ 1, 9.[2]  In its complaint, Global Tech characterizes itself as a resident of Nevada.  ¶ 5.

---

[1] Unless otherwise noted, citations to "¶ _" refer to the Complaint, Doc. 5.

[2] The Court considers factual allegations made in the parties' motions that are undisputed.

Wells is a financial consultant residing in California.  ¶¶ 2, 14; Doc. 22-1 at 9; Doc. 23 at 4.  He provides consulting services through StoryCorp, a company he owns and operates.  Doc. 22 at 9; Doc. 23 at 4.

In 2012, Global Tech alleges that it retained Wells to perform consulting services to resolve a dispute (the "Dispute") between David Reichman ("Reichman"), the chief executive officer of Global Tech, and Richardson & Patel LLP, a law firm based in New York City and Los Angeles.  ¶¶ 2, 10, 12.

According to the parties' oral agreement, Wells was to receive shares in Global Tech (represented by stock Certificate #ZQ673) (the "Shares") in exchange for resolving the Dispute.  ¶¶ 12, 17, 29-30.  On February 6, 2012, Global Tech—under its former name, Tree Top Industries, Inc.—issued to Wells a certificate (the "Certificate") for 1,500,000 fully paid and non-assessable shares of the common stock of Tree Top Industries, Inc.  Doc. 22-10. [3,4]  The Certificate represents "restricted stock, and is unable to be alienated without the authorization of the transfer Agent, and subject to an opinion letter from an attorney."  ¶ 16.  On May 10, 2012, Global Tech filed Form 10-Q with the U.S. Securities and Exchange Commission, stating that

---

[3] In general, "[i]f, on a motion under Rule 12(b)(6) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. Proc. Rule 12(d).  Under those circumstances, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id*.  When documentary evidence submitted by a defendant is "integral" to the complaint, however, the Court may take judicial notice of that evidence without converting the motion to dismiss to a motion for summary judgment pursuant to Rule 12(d).  *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995)).  The Court finds that certain of the documentary evidence attached by Wells to his memorandum in support of the motion to dismiss is integral to the complaint.  Here, Wells presents a copy of the underlying stock certificate, Doc. 22-10, and requests that the Court take judicial notice of the document.  The certificate is dated February 6, 2012 and is numbered ZQ.6713.  The certificate represents a value of 1,500,000 shares in Tree Top Industries Inc.

[4] The identification numbered specified in Global Tech's complaint ("#ZQ673"), Doc. 5, is not consistent with the underlying stock certificate filed by Wells ("ZQ.6713"), *see supra* n. 3.

"[o]n February 6, 2012, the Board of Directors authorized the issuance of 1,500,000 shares of common stock to a consultant for services performed."  Doc 22-4 at 8.[5]

Global Tech alleges that, as of August 3, 2021, the Dispute was unresolved.  ¶ 13.  As such, according to Global Tech records, Reichman never tendered the Shares to Wells.  *Id.*  On August 3, 2021, Wells emailed Reichman, seeking confirmation that he had performed his end of the bargain and requesting that Global Tech issue the Shares.  ¶ 14, 21.  Several days later, legal counsel retained by Wells issued an opinion letter indicating that the Shares should be released.  Id.  ¶ 15.  Currently, the Shares remain in the possession of Global Tech.  ¶ 24.

Global Tech maintains that no written agreement exists to authorize the delivery of the Shares to Wells.  ¶ 24.  It further alleges that because Wells did not resolve the Dispute, Wells has no right to the Shares.  ¶ 32.  Global Tech does not claim that Wells ever physically performed services or solicited opportunities within the State of New York, and does not dispute that Wells performed the relevant services in California.  The complaint also does not allege that Wells ever knowingly directed any communications into New York.  Although Global Tech alleges that Richardson & Patel is based in New York City and Los Angeles, it does not specify the nature of the transaction from which the Dispute between Reichman and Richardson & Patel arose.  Further, Global Tech does not allege that Wells was ever aware, or should have been aware, that Global Tech maintained headquarters in New York.

Global Tech filed a complaint against David Wells on August 17, 2021, seeking a preliminary injunction barring Wells from alienating the Shares, and an order from the Court terminating Wells' ownership interest in the Shares.  Doc. 5.  Wells was then served on September 22, 2021.  Doc. 12.  On November 11, 2021, Wells filed a separate action in the

---

[5] *See supra* n.3.

United States District Court for the District of Nevada.  Doc. 22-1 at 12; Doc. 22-5.  On

December 14, 2021, Wells filed a motion to dismiss for lack of jurisdiction, improper venue, and

failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(2), 12(b)(3),

and 12(b)(6), respectively.  Doc. 22.  Seeking emergency relief to prevent Wells from alienating

the Shares under dispute, on April 25, 2022, Global Tech requested a hearing to show cause for a

preliminary injunction.  Doc. 27.  On April 29, 2022, the hearing was held and Global Tech's

request for a preliminary injunction was denied.  Doc. 35.

## II.    Legal Standard

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or

entity against whom [he] seeks to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d

30, 34 (2d Cir. 2010).  To meet this burden, the plaintiff must plead facts sufficient for a *prima*

*facie* showing of jurisdiction.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.

2001).  The Court construes all of the plaintiff's allegations as true and resolves all doubts in its

favor.  *Casville Invs., Ltd. v. Kates*, 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July

8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v.*

*Bloomberg LP*, 883 F.Supp.2d 511, 513 (S.D.N.Y. 2012)).  "However, a plaintiff may not rely

on conclusory statements without any supporting facts, as such allegations would 'lack the

factual specificity necessary to confer jurisdiction.'"  *Art Assure Ltd., LLC v. Artmentum GmbH*,

14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan*

*Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  When ruling on a 12(b)(2) motion, a court

may rely on materials outside the pleadings.  *Casville Invs.*, 2013 WL 3465816, at *3.

"The legal standard for a motion to dismiss for improper venue is the same as a motion to

dismiss for lack of personal jurisdiction."  *Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353,

355 (2d Cir. 2005)).  "When a defendant challenges either the jurisdiction or venue of the court,

4

the plaintiff bears the burden of showing that both are proper." *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)). To meet this burden, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction or venue. *Glasbrenner*, 417 F.3d at 355 (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)).

Venue is proper in the chosen forum if: (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) the defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b). Venue is improper when a defendant does not reside in the state at issue, even if a co-defendant does reside in the district in which the suit is brought. *Gerety v. Sunrise Express, Inc.*, 95 Civ. 2090 (HB), 1996 WL 19047, at *2 (S.D.N.Y. Jan. 18, 1996) (citing *Camp v. Gress*, 250 U.S. 308, 315 (1919)).

## III.   Analysis

### a.   Personal Jurisdiction

"There are 'two categories of personal jurisdiction: general and specific personal jurisdiction. General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014)). Global Tech asserts that the Court has specific personal jurisdiction over Wells. Doc. 23 at 5.

In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker*, 261 F.3d at 208 (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In this case, the Court must first determine whether personal jurisdiction is appropriate pursuant to New York State's long-arm jurisdiction statute, C.P.L.R. § 302(a). If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the Court will then evaluate whether the exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

Under New York law, "[s]pecific jurisdiction is governed by CPLR § 302(a), which empowers courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case 'aris[e] from' one of four specific kinds of contact within New York," one of which is relevant here. *Thackurdeen*, 130 F. Supp. 3d at 801. Under C.P.L.R. § 302(a)(1), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state."[6] Global Tech asserts that Wells is subject to the Court's jurisdiction on those grounds. Doc. 23 at 5. Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from'

---

[6] C.P.L.R. § 302(a) provides that a court may also exercise personal jurisdiction over a non-domiciliary who: (2) "commits a tortious act within the state[;]" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a)(1)–(4) (McKinney). But because Global Tech itself finds that any potential issues raised by subsections (2), (3), and (4) of § 302(a) would be irrelevant and only capable of "clutter[ing] the issue and caus[ing] confusion," Doc. 23 at 5, the Court will only address the applicability of C.P.L.R. § 302(a)(1).

6

such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)

(citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65 (N.Y. 2006)).  Section

302(a)(1) is a "single act" statute:  "proof of one transaction in New York is sufficient to invoke

jurisdiction, even though the defendant never enters New York, so long as the defendant's

activities here were purposeful and there is a substantial relationship between the transaction and

the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988) (citations

omitted).  As the New York Court of Appeals has noted, "it is not the quantity but the quality of

the contacts that matters under our long-arm jurisdiction analysis." *Paterno v. Laser Spine Inst.*,

23 N.E.3d 988, 994 (N.Y. 2014) (citation omitted).  Further, the "arising from" prong of section

302(a)(1) does not require a causal link, but rather requires "a relatedness between the

transaction and the legal claim such that the latter is not completely unmoored from the

former[.]" *Kiss Nail Prod., Inc. v. One Two Cosmetics, LLC*, No. 19-CV-536 (MKB), 2020 WL

2924614, at *5 (E.D.N.Y. Mar. 5, 2020) (internal quotation marks and citations omitted).

To determine whether a non-domiciliary has "transact[ed] business" in New York, courts

consider the totality of the circumstances.  *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages

Co.*, No. 00 Civ. 5663, 2001 WL 1468168, at *6 (S.D.N.Y. Nov. 19, 2001).  Common factors

include, but are not limited to:

> (1) whether the defendant has an ongoing contractual relationship with a New York
> corporation; (2) whether the defendant negotiated or executed a contract in New York,
> and whether the defendant visited New York after executing the contract with the parties;
> (3) whether there is a choice-of-law clause in any such contract; and (4) whether the
> contract requires franchisees to send notices and payments into the forum state or
> subjects them to supervision by the corporation in the forum state.

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 397

(S.D.N.Y. 2007) (internal quotation marks and citations omitted); *Yellow Page Solutions*, 2001

WL 1468168, at *6 (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25,

29-30 (2d Cir. 1996)).  Ultimately, a defendant transacts business within the meaning of §

302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New

York], thus invoking the benefits and protections of its laws."  *Fischbarg v. Doucet*, 9 N.Y.3d

375, 380 (N.Y. 2007) (internal quotation marks and citation omitted).

   If Global Tech establishes proof of a transaction sufficient to invoke jurisdiction under

New York law, the Court will then evaluate whether the exercise of personal jurisdiction

comports with the Fifth Amendment Due Process Clause of the United States Constitution.

*Queen Bee of Beverly Hills, LLC*, 616 F.3d at 164.[7]

   Global Tech fails to make a *prima facie* showing that Wells "transact[ed] any business"

or "suppl[ied] services" in New York State, thereby availing himself of the benefits and

protections of New York law.  *See* C.P.L.R. § 302(a)(1).  Indeed, Global Tech has not alleged

that the underlying contract was negotiated or executed in New York, that Wells visited New

York at any time before or after the contract was executed, that there was a choice-of-law clause

in the relevant contract, or that Wells ever knowingly directed any notices, payments, or

communications into New York.[8]  At best, Global Tech asks this Court to exercise jurisdiction

over Wells solely because he allegedly engaged in an ongoing contractual relationship with a

---

[7] In order for the exercise of personal jurisdiction to comport with due process, there must be a showing that the
defendant purposefully availed himself of the privileges and benefits of New York laws, or in other words, that a
"defendant's conduct and connection with the forum State [was] such that he should reasonably anticipate being
haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  For the reasons
discussed herein, the Court need not here undertake this final-step analysis.  And even if it did, *arguendo*, the Court
would not find the exercise of personal jurisdiction to comport with due process for the same reasons given below.

[8] Even in cases where one of those factors is met, personal jurisdiction is not automatic. *See, e.g. Berkshire Capital
Group, LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC), 2007 WL 2757116, at *4 (S.D.N.Y. Sept. 21,
2007), *aff'd*, 307 Fed. Appx. 479 (2d Cir. 2008) (finding that a New York choice of law clause was "not sufficient in
and of itself to sustain jurisdiction."); *Presidential Realty Corp. v. Michael Square West, Ltd..,* 376 N.E.2d 198
(N.Y. 1978) (holding that jurisdiction could not be sustained even where the underlying contract was signed in New
York State).

corporation that operates out of New York.[9]  But Global Tech does not even allege that Wells

knew that it has offices in New York.  And what's more, a defendant's purported knowledge of a

corporation's "physical presence in New York does not establish … purposeful availment"

automatically.  *Unlimited Care, Inc. v. Visiting Nurse Ass'n of Eastern Massachusetts, Inc*., 42 F.

Supp. 2d 327, 332 (S.D.N.Y. 1999) (quoting C*ontinental Field Service Corp. v. ITEC Intern.,

Inc.*, 894 F. Supp. 151, 154 (S.D.N.Y.1995)) (internal quotations omitted).  The defendant's

connection to the forum state must be *purposeful*.  *George Reiner & Co., Inc. v. Schwartz*, 41

N.Y.2d 648, 652 (N.Y. 1977).  Global Tech has not pleaded any facts that even suggest that

Wells exercised any such purpose to be subject to the laws of New York.  That Wells entered

into a transaction with a Nevada corporation that *happens* to operate executive offices in New

York is, by itself, insufficient to establish personal jurisdiction.  *See Burger King v. Rudzewicz*,

471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-

state party *alone* can automatically establish sufficient minimum contacts in the other party's

home forum… the answer clearly is that it cannot.").  Indeed, the facts alleged in the complaint,

even viewed in a light most favorable to Global Tech, suggest that Wells' connection to New

York State was more "coincidental" than "purposeful."  *See Licci v. Lebanese Canadian Bank*,

984 N.E.2d 893, 900 (N.Y. 2012).

Taken as a whole, Global Tech's complaint asks this Court to focus on its own conduct,

rather than that of Wells.  This would turn the test for personal jurisdiction on its head.  "The

appropriate focus of an inquiry under CPLR § 302(a)(1) is on what the non-domiciliary

---

[9] Although Global Tech alleges that Richardson & Patel also maintained offices in New York, Global Tech does not allege that the Dispute between Reichman and Richardson & Patel was centered in New York.  As such, the sole basis for Global Tech's contention that this Court may exercise personal jurisdiction over Wells is that Global Tech is purportedly domiciled in New York.  Indeed, Global Tech's response in opposition to Wells' motion to dismiss does not mention Richardson & Patel, and does not raise any arguments relating to the original dispute between Reichman and Richardson & Patel.  *See* Doc. 23.

defendant did in New York and not on what the plaintiffs did." *Berkshire Capital Group, LLC,* 2007 WL 2757116, at *4 (quoting *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y.1995)). Because Plaintiff has not met its burden of establishing a *prima facie* showing that Wells transacted any business in New York, the Court may not exercise personal jurisdiction over Wells.[10]

    b.  <u>Venue</u>

Wells argues that venue is improper because: (1) he does not reside in this district, (2) none of the events giving rise to this claim occurred in New York, and (3) there is a district in which this action may otherwise be brought. The Court agrees.

Wells does not reside in this district or in New York State. Residency for venue purposes is determined in accordance with 28 U.S.C. § 1391(c)(2), which provides that "an entity ... shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" Since Wells is not subject to personal jurisdiction in New York, venue is not proper.

Furthermore, venue is improper under 28 U.S.C. § 1391(b)(2), as Global Tech has not alleged that the events that gave rise to this litigation—namely, when Global Tech retained Wells to resolve its Dispute with Richardson & Patel—occurred in this district. The Court is not persuaded that venue is proper simply because "the shares underlying this matter are traded on the OTC Market Place which is located in NYC," as Global Tech contends. Doc. 5 ¶ 6. That fact is not alone sufficient for the Court to find that New York was the "locus of operative facts" that gave rise to this lawsuit. *See, e.g., SEC v. Hill International, Inc.*, No. 20 Civ. 447 (PAE), 2020 WL 2029591 (S.D.N.Y. April 28, 2020) (finding "the locus of operative facts" favored

---

[10] Accordingly, there is no need to independently address whether this cause of action arises from any such transaction, or whether the exercise of jurisdiction in this case would be constitutionally permissible.

transfer even where the stocks at issue were traded on the Manhattan-based New York Stock Exchange); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) (holding that activities necessary to maintain a stock exchange are, without more, insufficient to confer jurisdiction). Therefore, it cannot be said that a substantial part of the events giving rise to Global Tech's claims occurred in New York, as required for venue to be proper under § 1391(b)(2).

Finally, this is not the only district in which this action may be brought, as there is another pending lawsuit between these parties in the District of Nevada. Doc. 22-5. Indeed, Global Tech does not itself contend that this is the only district in which this lawsuit may be brought. Accordingly, the Court finds that venue is improper.

c. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that it would be an abuse of discretion "inconsistent with the spirit of the Federal Rules" for a district court to deny leave without some justification, "such as … futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Moreover, where a plaintiff has neither requested leave to amend, nor indicated additional facts that would be added to the complaint, a court is not required to grant leave to amend *sua sponte*. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 Fed. App'x 472, 474 (2d Cir. 2009) ("Given that [the plaintiff] did not move for leave to replead in opposition to [the defendant's] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, sua sponte, leave to replead.")

Although Global Tech has not requested leave to amend, it is plausible that additions to its complaint specifying how the transaction in question was "centered" in New York could establish a *prima facie* showing of personal jurisdiction over Wells.

Global Tech alleges that it entered into an agreement through oral communications with Wells in or about 2012. Doc. 5 ¶ 12. The complaint also indicates that there was no formal written services agreement. *Id.* ¶ 14. Evidently, the oral communications that occurred in 2012 were the basis for the dispute in question. Furthermore, the stock certificate issued to Wells was filed on February 6, 2012. Doc. 22-10. Plaintiff brought this suit on August 17, 2021. Doc. 5. The claim was therefore brought approximately 9 years after the cause of action accrued.

Under New York law, causes of action for breach of contract and breach of the covenant of good faith and fair dealing are governed by N.Y. C.P.L.R. § 213(2), which provides for a six-year statute of limitations. *See Callahan v. Credit Suisse (USA)*, Inc., 10 Civ. 4599 (BSJ), 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011) (the statute of limitations on a claim for breach of the implied covenant of good faith and fair dealing is six years). In California, a two-year statute of limitations applies to breaches of oral contracts, Cal. Civ. Proc. Code § 339, and a four-year statute of limitations applies to breaches of written contracts, Cal. Civ. Proc. Code § 337. *In re Capital Options, LLC*, 719 Fed. Appx. 609, 611 (9th Cir. 2018). Were either New York or California law applicable to Plaintiff's claims, they would in each case be barred by the statute of limitations.

Accordingly, any claims Plaintiff might seek to add to an amended complaint would be time-barred. As such, they would be futile.

**IV.   Conclusion**

For the reasons set forth above, Wells' motion to dismiss for lack of personal jurisdiction is GRANTED.  The Clerk of Court is respectfully directed to terminate Wells as a Defendant, and to terminate the motion, Doc. 22.

It is SO ORDERED.

Dated:    July 21, 2022
          New York, New York

_____
                Edgardo Ramos, U.S.D.J.